# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

GIOVANNI VALERIO,

    *Petitioner*,

vs.

ANTHONY SCILLIA, *et al.,*

    *Respondents*.

2:10-cv-01806-GMN-GWF

ORDER

This represented habeas matter under 28 U.S.C. § 2254 comes before the Court on petitioner's motion (ECF No. 57) for leave to conduct discovery under Rule 6(a) of the Rules Governing Section 2254 Proceedings [the "Habeas Rules"].

### *Background*

After state and federal post-conviction litigation spanning over a fifteen year period, including now nearly seven years in federal court, it perhaps would be worthwhile to take stock of where this case has been, as well as where it should be going at this point.

Petitioner Giovanni Valerio challenges his Nevada state conviction, pursuant to a guilty plea, of six counts of robbery with the use of a deadly weapon. With the weapon sentencing enhancements, he is serving twelve consecutive terms of 26 to 120 months, amounting in the aggregate to a 26 to 120 year combined sentence.[1]

////

---

[1] ECF No. 11-3 (Exhibit 6), at 26-27. All page citations herein are to the CM/ECF generated electronic document page number in the page header, not to any page number in the original transcript or document, unless noted otherwise.

The time period for appealing the July 11, 2002, judgment of conviction expired on Monday, August 12, 2002, without petitioner having taken a direct appeal.[2]

After 318 days had elapsed, petitioner filed a timely state post-conviction petition on June 27, 2003, alleging, *inter alia*, that he had been denied his right to appeal through ineffective assistance of counsel. Proceedings were pending continuously thereafter on the petition and/or the *Lozada* petition[3] authorized thereby through to the issuance of a remittitur in the Supreme Court of Nevada on June 17, 2008.[4]

After another 337 days had elapsed, on May 21, 2009, petitioner filed another state post-conviction petition. The Supreme Court of Nevada ultimately determined that the petition was timely, but the court denied relief on September 29, 2010, variously on the merits and under the doctrine of law of the case. The remittitur issued on October 27, 2010.[5]

The federal petition was constructively filed on or about October 11, 2010, and was actually filed on October 15, 2010, with both dates being prior to the issuance of the remittitur in the last state court proceeding.

Applying 28 U.S.C. § 2244(d)(1) and (2), the federal limitation period in this case expired – absent further tolling or delayed accrual – on Monday, August 4, 2008, following the

---

[2]In prior orders, the Court instead has used either an August 10, 2002, or August 11, 2002, date. Those dates fall on Saturday and Sunday, respectively; and the actual 30-day time period to appeal did not expire until the following judicial day on the Monday. It does not appear that the motion for reconsideration of sentence filed on July 22, 2002, (ECF No. 11-3, at 29-33) constituted a tolling motion under Nevada Rule of Appellate Procedure 4(a)(4). *Cf. Phelps v. State*, 111 Nev. 1021, 1022, 900 P.2d 344, 345 (1995)(motion for reconsideration not a tolling motion). The motion in any event was denied on August 2, 2002, and the motion thus would have extended the appeal time to only Tuesday, September 3, 2002, after the Labor Day holiday, if it instead properly was considered to be a tolling motion. (ECF No. 11-3, at 43-44.)

[3]At that time under Nevada practice, a *Lozada* petition allowed a petitioner to pursue all issues that he otherwise could have pursued in a timely appeal in a state post-conviction petition.

[4]ECF Nos. 11-4 through 11-7 (Exhibits 10 through 24). The Court previously has counted the elapsed days for this period instead at 321 in prior orders. This variance is due in part to the different date of expiration applied for the direct appeal time. Moreover, neither the August 12, 2002, day on which the appeal time expired nor the first day of the June 27, 2003, statutory tolling event count against the federal limitation period. As discussed further, *infra*, neither this Court's prior orders nor the order of remand from the Ninth Circuit preclude this Court from correctly calculating the running of the federal limitation period in determining whether equitable tolling renders the federal petition timely.

[5]ECF Nos. 11-7 & 11-8 (Exhibits 25-35).

weekend, *i.e.*, after another 47 days had elapsed after the issuance of the remittitur on the appeal from the state district court's denial of relief on the *Lozada* petition.[6]

Petitioner has sought to establish equitable tolling herein on the basis that he believed that trial counsel was pursuing a direct appeal and that he filed his first state post-conviction petition within a reasonable time after he should have known that counsel had not done so.

Prior to the appeal herein, the Court held that petitioner had failed to establish that he pursued his rights diligently because he provided "no evidence or even argument that he personally took any steps to establish the status of his appeal either by attempting to contact his counsel or the court." The Court accordingly held that petitioner had failed to establish a basis for equitable tolling for any period of time prior to the expiration of the federal limitation period on or about July 31, 2008, as per the Court's calculation of the running of the limitation period at that time. The Court thus had no occasion to consider whether the later May 21, 2009, state petition otherwise would have provided a basis for statutory tolling under 28 U.S.C. § 2244(d)(2) if the federal limitation period had not already expired under the Court's ruling.[7]

On August 5, 2013, the Court of Appeals reversed and remanded. The appellate court concluded:

> On the basis of the existing record we are unable to determine whether, from the date that Valerio learned that his trial counsel had not filed a direct appeal, Valerio diligently pursued his rights by filing a prompt petition for post-conviction relief. There is an unresolved factual dispute regarding when Valerio learned that no direct appeal had been filed and, thereafter, what efforts were undertaken by Valerio to appeal his conviction.

ECF No. 20, at 2. The court thereupon remanded with the following instructions:

> Accordingly, we VACATE the district court's order dismissing the petition as untimely and REMAND for an evidentiary hearing or for other further factual development as may be necessary to determine whether Valerio has exercised

---

[6]The Court, again, reached a slightly different date in prior orders. See note 4, *supra*.

[7]See ECF No. 14, at 5-6. *Cf. Rudin v. Myles*, 781 F.3d 1043, 1056 n.16 (9th Cir. 2015), *cert. denied*, 136 S.Ct. 1157 (2016)(a statute of limitations that already has run cannot be tolled thereafter).

> diligence. If the court concludes that Valerio diligently pursued his rights then it should consider whether Valerio has otherwise demonstrated that he is entitled to equitable tolling of the one-year limitations period. We need not, and do not, reach the merits of any other issue urged on appeal, including Valerio's claim that his conviction was not final until after the adjudication of his *Lozada* petition.

ECF No. 20, at 3.

Given its rationale for decision, its disposition, and the express reservation in the final sentence quoted above, the Court of Appeals had no occasion to consider whether Valerio's later May 21, 2009, state petition might provide a basis for statutory tolling under 28 U.S.C. § 2244(d)(2) if it ultimately were determined on remand that the federal limitation period had not yet expired, due to equitable tolling, by the time that the May 21, 2009, petition was filed.

What has followed over the course of what now has been four years since the remand has been serial supplemental briefing, unconnected to a then-pending motion, on subsidiary issues involved in the timeliness inquiry along with an interim order addressing issues discussed in one phase of the briefing.

The Court held along the way, *inter alia*, that the Ninth Circuit's remand order did not permit the Court to consider petitioner's statutory tolling arguments and that petitioner was not entitled to statutory tolling during the time that his May 21, 2009, petition was pending in the state courts.[8]

The present motion for discovery follows upon the parties' arguments in their briefing thereafter on equitable tolling issues, but, as is discussed *infra*, apparently not all equitable tolling issues.

Petitioner maintained, *inter alia*, that he exercised reasonable diligence during the initial otherwise untolled 318-day period between August 12, 2002, and June 27, 2003, because: (1) he was under the impression during the entire time period that his attorney had filed an appeal for him because he asked her to, she said she would, and she never informed him that she had failed to do so; (2) both he and his mother called counsel multiple times by telephone

---

[8] ECF No. 38, at 4 & 6.

-4-

1 and Valerio sent counsel numerous letters trying to inquire as to the status of the appeal but counsel did not return the calls or respond to the letters; (3) it was reasonable for him to believe that the appeal was pending during this period because he had been told that appeals generally take one to two years to be heard; (4) when he approached staff on February 21, 2003, about the problems that he was having getting help with his legal work, he was told to apply to the pardons board when applications became available, and it was not until June of 2003 when he finally was able to speak with an inmate law clerk, acting promptly thereafter; and (5) he acted expeditiously throughout the post-conviction process, including filing a state petition within a year of the denial of his *Lozada* petition and filing his federal petition within twelve days of the order affirming the denial of the later petition. Petitioner further maintained that extraordinary circumstances that stood in the way of and prevented a timely federal petition during this time included: (1) his counsel's failure to file a direct appeal and to promptly inform him of her failure to do so; and (2) lack of access to the prison law library and law clerks while in a Youthful Offender Program (YOP) unit.

Petitioner attached a new declaration with the memorandum wherein he stated, *inter alia*, that: (1) when an inmate law clerk named (to the best of his recollection) Raul came to the YOP unit to speak to the unit on immigration issues, Raul told him that he did not think that his attorney had filed an appeal and that he needed to file paperwork immediately, which he did shortly thereafter on June 27, 2003; and (2) he first learned at the January 24, 2004, state court evidentiary hearing that counsel in fact never had filed his direct appeal.[9]

The foregoing does not constitute petitioner's briefing as to all potential equitable tolling issues in the matter. Petitioner requests that if the Court does not equitably toll the entire time period from August 12, 2002, through June 27, 2003, that the Court allow additional briefing by the parties covering the time period from June 17, 2008, through May 21, 2009.[10]

/ / / /

---

[9] ECF No. 44-37 (Exhibit 37), at 3.

[10] ECF No. 43, at 3 n.4.

*Discussion*

**Motion for Discovery**

Habeas Rule 6(a) provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure . . . ."[11] In *Bracy v. Gramley*, 520 U.S. 899 (1997), the Supreme Court held that Rule 6 was meant to be applied consistently with its opinion in *Harris v. Nelson*, 394 U.S. 286 (1969), which called for adoption of the rule. 520 U.S. at 904 & 909. In *Harris*, the Court held that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." 394 U.S. at 300.

Petitioner seeks an order under Habeas Rule 6(a) authorizing discovery seeking the following from the Nevada Department of Corrections (NDOC):

(a) any and all records or logs of incoming and outgoing legal and general mail, and certified mail at High Desert State Prison (HDSP) from July 17, 2002, until August 16, 2002, and Southern Desert Correctional Center (SDCC) from August 16, 2002, until July 11, 2003;

(b) any and all records or logs of legal and non-legal phone calls at HDSP from July 17, 2002, until August 16, 2002, and SDCC from August 16, 2002, until July 11, 2003;

(c) any and all records or logs of legal and non-legal visitors at HDSP from July 17, 2002, until August 16, 2002, and SDCC from August 16, 2002, until July 11, 2003;

(d) any and all law library records (including, but not limited to: (a) copies of work records; (b) supply issuance records; (c) issuance of legal materials; and (d) law clerk names, with their inmate numbers and logs) at SDCC from August 16, 2002, until July 11, 2003;

---

[11] Petitioner quotes the text of the rule as it instead read prior to 2004, perhaps adopting the quotation of the rule as it then existed within the 1997 *Bracy* decision cited in the text.

While the Advisory Committee notes for the 2004 changes reflect that no substantive change was intended, the current language perhaps more clearly emphasizes the essential prior gatekeeping function performed by the judge in determining whether *any* discovery will be allowed in the first instance in a habeas case. *See, e.g., Bittaker v. Woodford*, 331 F.3d 715, 728 (9th Cir. 2003)(parties in habeas cases have no right to discovery, and such discovery is available only if and to the extent that the judge in the exercise of her discretion grants leave).

| | | |
|---|---|---|
| 1 | (e) | any lists or records of any and all purged, deleted, or destroyed documents, and documents transferred to storage regarding all of the above; and |
| 3 | (f) | depositions of NDOC records custodians, both from the central NDOC offices and from the individual institutions including HDSP and SDCC, concerning the records maintained at each institution, including but not limited to: what records are regularly maintained in the course of business at each institution; whether the records remain at the institution or follow the inmate; the record retention policy for the various records; the individuals involved in maintaining and destroying such records; and the individuals responsible at each institution for responding to records requests and/or accepting service of subpoenas. |

See ECF No. 57, at 8-9.

Petitioner maintains that such discovery is necessary because respondents' equitable tolling memorandum: (1) maintained that defense counsel instead probably called Valerio shortly after learning fairly early on that an appeal had not been filed to inform him of that failure; (2) questioned the veracity of his uncorroborated representations that he contacted counsel repeatedly seeking a status update on the direct appeal, and (3) questioned petitioner's account regarding inmate law clerk Raul.[12]

Respondents suggest in their opposition to the discovery motion that the 2002-03 mail, phone and visiting room logs would not have been retained under NDOC document retention policies. Respondents attached a copy of Valerio's individual visitor log and memoranda regarding visits dating back to late 2004 and early 2005. Respondents further maintain that records regarding prison employment, including via inmates' credit histories, would not show where inmates worked, such that the only way to try to determine whether an inmate worked in a prison law library in 2003 "would be to read through the casenotes of approximately 1600 inmates to see if an entry was made regarding an employment at the law library." Respondents further maintain that there is no requirement that the casenotes reflect an inmate's employment, such that NDOC employees would have to review the 1600 casenotes

---

[12]ECF No. 57, at 8.

"on the off chance that: 1) the casenotes might show who worked in the law library; 2) that [petitioner] might recognize the name of the inmate who allegedly told him [to file his paperwork]; and 3) that he might be able to locate that inmate who is no longer in prison."[13]

Petitioner asserts that respondents' suggestion that the sundry logs are not retained is inconsistent with their statement in their opposition also that the visitors log must be maintained during the entire time that an inmate is in custody. Petitioner further maintains that a more thorough search as to law library employment would be required only if Valerio is mistaken about the inmate's name being Raul. Petitioner maintains that, otherwise, it should not be that difficult to determine whether an SDCC inmate named Raul would have been an inmate law clerk who had access to the YOP unit in 2003.[14]

At the outset, with regard to the various logs from 2002-03, if they still exist, the Court is not sanguine that good cause exists for expansive discovery simply because respondents challenged the veracity of petitioner's account. Factual claims such as these frequently are resolved at an evidentiary hearing based upon any related content in the inmates' and former counsel's files and an assessment of the credibility of their testimony on the stand without extensive discovery. There further are potential confidentiality and privacy interests of other inmates as well as individuals outside the prison involved in wholesale production of logs, especially any logs that are not inmate specific, without redaction. For example, the visitor logs filed herein, while specific to Valerio, include apparent social security numbers of adults and the names of minors, all of which must be redacted at the very least prior to filing, as well as personal information regarding visitors that has nothing to do with this case.[15] Any such redaction adds to the potential burden of discovery.

---

[13]ECF No. 64.

[14]ECF No. 65, at 7 n.4 & 9.

[15]See, e.g., ECF No. 64-1, at 2. These personal identifiers should not have been included in an unredacted open court filing. Moreover, even vis-à-vis only production rather than filing, each subsequent ever broader distribution of a social security number only heightens the risk of possible eventual identity theft. Particularly where privacy interests of others are involved, the Court is not limited by the parties' arguments.

-8-

With regard to law library records, there would appear to be the prospect of a burdensome "goose chase" for a perhaps now former inmate law clerk who only might be named Raul and who might be who knows where at this point. And the broad discovery sought, if all such records were retained and produced, would appear to even more directly impinge upon the confidentiality interests of other inmates, even if not technically rising to the level of attorney-client privilege. *Inter alia*, at least some inmates, including especially those convicted of sexual offenses, in the past have expressed reluctance to seek help from a prison law library for fear of the details of their offense or prior record getting "out onto the yard." Broad discovery of law library legal work and material requests threatens to heighten such potential concerns and possibly further discourage such inmates from making requests for law library assistance.

Nor is the Court sanguine that respondents' statement as to what records must be "maintained" is inconsistent with their statement as to what records thereafter are destroyed under document retention policies. It is not necessarily inconsistent to say that a record that must be contemporaneously made throughout an inmate's incarceration nonetheless is not retained after a certain period of time.

In all events, there appear to be questions at the very least as to what potentially responsive records even exist at this point and further as to what the records that remain available might show. The most expeditious manner of establishing the actual state of affairs, as opposed to via second-hand communication through lawyers, is to permit petitioner to take Rule 30(b)(6) discovery depositions of the pertinent records custodian or custodians. The Court will allow discovery depositions of the custodian(s), but the Court is not authorizing full document-production depositions over and above the production of exemplars to illustrate the nature of the specific records sought and the type of information that they contain.[16]

/ / / /

---

[16] At the same time, if it is determined in preparing for and/or during the course of the deposition(s) that responsive records in fact are available and can be produced without undue burden, nothing prevents respondents from producing same and thereby limiting the discovery issues that remain.

The parties then will file simultaneous memoranda within sixty days of entry of this order addressing any discovery issues that have not been mooted or otherwise resolved by the depositions. It will be petitioner's burden to affirmatively demonstrate at that time, based upon, *inter alia*, the custodian(s) deposition testimony, that: (1) any remaining records still sought in fact exist; (2) production of the records is warranted under the full standard set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure and in particular that the discovery is proportional to the needs of the case and that its likely benefit outweighs the burden or expense of the discovery; (3) the production sought can be achieved, without undue burden, without compromising the confidentiality and privacy interests of other individuals, including but not limited to other inmates; and (4) counsel have conferred in good faith under Local Rule LR 26-7(c) and have been unable to resolve the remaining discovery issues as to which further judicial relief is sought.[17]

Petitioner shall file copies of the full deposition transcripts as electronic exhibits to petitioner's memorandum, notwithstanding any other rules to the contrary regarding filing of depositions.

All parties further shall fully comply in all filings with Local Rule LR IC 6-1 with regard to protection of personal-data identifiers.

If all discovery issues have been resolved, petitioner instead shall file, by the above sixty-day deadline at the latest, a notice to that effect, with no necessity of attaching electronic copies of the deposition transcripts as exhibits.

Any and all discovery disputes in this habeas matter will be resolved by the presiding Chief District Judge, without referral under Local Rule 26-7(a) to the magistrate judge otherwise nominally assigned to the habeas action.

The Court emphasizes that it is not ordering discovery over and above the 30(b)(6) depositions. Prior court approval remains a fundamental prerequisite to any further discovery

---

[17]The fact that counsel must first confer before further judicial relief is sought enables the parties to file simultaneous briefing. Petitioner will not be seeking relief as to which petitioner's counsel has not already specifically conferred with respondents' counsel.

over and above the 30(b)(6) depositions and exemplars, although voluntary production is not precluded by this order.[18]

The motion for discovery accordingly will be granted in part and denied in part on the showing and arguments made, as specified above.

### *Sua Sponte Reconsideration of Prior Statutory Tolling Holdings*

The Court *sua sponte* reconsiders its prior holdings that (a) the mandate precludes consideration of all statutory tolling issues, and (b) petitioner would not be entitled to statutory tolling during the pendency of the timely May 21, 2009, state petition.

On the first point, the authority cited in the Court's prior order specifically concerns a federal district court's authority in an original criminal case to resentence the defendant after an appellate order vacating one of multiple convictions and remanding, which is a situation not presented here. *See United States v. Ruiz-Alvarez*, 211 F.3d 1181, 1184-85 (9th Cir. 2000). *Ruiz-Alvarez* otherwise reaffirms that, under the mandate rule, the mandate leaves to the district court any issue not expressly or impliedly disposed of on appeal. 211 F.3d at 1184. As discussed previously in the background, statutory tolling issues, including in particular statutory tolling issues concerning the May 21, 2009, state petition, were neither expressly nor impliedly resolved on the prior appeal in this matter. Moreover, equitable tolling issues cannot be considered in a vacuum but instead constitute inherently fact-intensive equitable issues decided against the backdrop of how the federal limitation period otherwise is calculated and tolled directly under 28 U.S.C. § 2244(d). The mandate rule therefore does not preclude this Court from considering all statutory tolling issues on remand.[19]

---

[18]Petitioner's counsel expressed frustration in the reply on the motion that respondents did not produce more in response to the motion, and petitioner seeks an order "compelling" discovery. Again, under Habeas Rule 6(a), a motion for discovery in a habeas case does not constitute a self-operative discovery request. There is no pending discovery request as to which a response is due unless and until the Court orders such discovery in the exercise of its discretion. There thus is no pending discovery request as to which to compel production.

[19]The Court further notes that the issue discussed in the prior order of whether the limitation period did not begin to run until after resolution of the *Lozada* petition does not constitute a statutory tolling issue under § 2244(d)(2). That issue instead is one of when the limitation period begins to run – an accrual issue –
(continued...)

On the second point, the May 21, 2009, state petition was timely and therefore clearly will statutorily toll the limitation period under 28 U.S.C. § 2244(d)(2) in the event that, with equitable tolling, the limitation period did not expire prior to May 21, 2009. *See, e.g., Pace v. DiGuglielmo*, 544 U.S. 408 (2005). There is no viable argument to the contrary.

The Court accordingly *sua sponte* reconsiders its prior ruling and holds accordingly.

### *Setting of Evidentiary Hearing*

Following resolution of any remaining discovery issues, the Court will be setting the matter promptly thereafter for an evidentiary hearing on any and all issues pertaining to the timeliness of the federal petition, including in particular equitable tolling issues. Any further briefing desired by the parties – as to all such issues – will need to be presented in pre-hearing memoranda filed a week prior to the hearing. The Court will determine whether any post-hearing briefing is warranted at the conclusion of the hearing, but the parties should not assume that same will be allowed. In short, the Court will be seeking to bring the timeliness issues to a conclusive resolution in the district court, one way or the other, in findings and conclusions made based on the evidence presented at the hearing. Over four years after the Court of Appeals' remand order, it perhaps is past time to have done so.

IT THEREFORE IS ORDERED that petitioner's motion (ECF No. 57) for leave to conduct discovery is GRANTED IN PART and DENIED IN PART, such that: (a) petitioner is authorized to promptly take Rule 30(b)(6) depositions subject to the conditions outlined in pages 9-11 of this order; and (b) within sixty (60) days of entry of this order, counsel shall file simultaneous memoranda addressing any discovery issues and requests for relief that remain after such depositions unless all such issues are resolved, in which event petitioner's counsel instead shall file a notice to that effect promptly on or before said deadline.

---

[19](...continued)
under § 2244(d)(1)(A). A different issue was presented as to whether the mandate precludes consideration of that particular issue in lieu of a determination as to equitable tolling covering part of the same time period. The Court has no occasion to reconsider its alternative holding that the limitation period began to run instead after the expiration of the time to appeal the original judgment, per the Ninth Circuit authorities cited in the prior order. See ECF No. 38, at 4-6. Regardless of whether the mandate precludes consideration of that issue on remand, petitioner's argument under § 2244(d)(1)(A) in all events is foreclosed by the cited cases.

IT FURTHER IS ORDERED that the Court, following *sua sponte* reconsideration, reconsiders its contrary holdings in its prior order (ECF No. 38) and now holds that: (a) the appellate mandate does not preclude consideration of all statutory tolling issues on remand; and (b) the May 21, 2009, state petition will statutorily toll the limitation period under 28 U.S.C. § 2244(d)(2) in the event that, with equitable tolling, the limitation period did not expire prior to May 21, 2009.

DATED: September 22, 2017

_____
Gloria M. Navarro, Chief Judge
United States District Court