UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| GIOVANNI VALERIO,<br><br>                          Petitioner,<br>     v.<br><br>ANTHONY SCILLIA, *et al.*,<br><br>                          Respondents. | Case No. 2:10-cv-01806-GMN-GWF<br><br>ORDER |

The Court is setting this represented habeas matter under 28 U.S.C. § 2254 for an evidentiary hearing directed to all factual issues pertaining to petitioner Giovanni Valerio's claim of equitable tolling of the federal limitation period.

In the prehearing memoranda directed by this order, the parties shall include, *inter alia*, briefing also directed to the following two issues.

*First*, the parties shall address whether factual inquiry on remand into whether petitioner could have or should have discovered earlier that defense counsel had failed to file a direct appeal is consistent with the Ninth Circuit's August 5, 2013, remand order.

It appears to be undisputed that defense counsel told Valerio that she would file a direct appeal but that she did not do so. The state district court's grant of *Lozada* petition[1] relief in 2004 was inherently based upon an arguably presumptively correct factual finding that counsel failed to file a requested appeal after stating that she would do so. (ECF No.

---

[1] *See Lozada v. State*, 110 Nev. 349, 871 P.2d 944 (1994). Nevada later replaced the judge-crafted *Lozada* petition remedy with an out-of-time direct appeal procedure pursuant to NRAP 4(c).

44-13, at 5, 7, & 9-11; ECF No. 44-14, at 6 & 7.)  Defense counsel further affirms in her June 13, 2011, declaration, *inter alia*, that she does not believe that she thereafter informed Valerio that she had failed to file a direct appeal.  (ECF No. 44-34, at 3.)

Valerio filed his first state petition alleging that defense counsel had failed to file a direct appeal on June 27, 2003, just over ten months after the direct appeal deadline had expired on August 12, 2002.

This Court's May 20, 2011, dismissal order noted that Valerio had not been "explicit as to when, exactly, he 'should have known' or did know that there was no appeal pending."  The order granted the respondents' motion to dismiss because, *inter alia*, Valerio had "provide[d] no evidence or even argument that he personally took any steps to establish the status of his appeal either by attempting to contact his counsel or the court," and he "offer[ed] no showing whatsoever that he diligently [pursued] his own appeal rights."  (ECF No. 14, at 6.)

The Ninth Circuit's August 5, 2013, order reversing and remanding did not explicitly reference any further factual inquiry into either (a) when Valerio "should have known" that an appeal had not been filed and/or (b) regarding the extent to which "he personally took any steps to establish the status of his appeal either by attempting to contact his counsel or the court."  Rather, the Ninth Circuit remanded for this Court to address "an unresolved factual dispute regarding *when* Valerio *learned* that no direct appeal had been filed and, *thereafter*, what efforts were undertaken by Valerio to appeal his conviction."  (ECF No. 24, at 2, with emphasis added.  *See also id.*, at 2-3.)

The Ninth Circuit's order remanding for this factual inquiry was entered against a backdrop in which, again, (a) it was undisputed in the state courts that defense counsel told Valerio that she would file an appeal, and (b) he came to a conclusion, despite her representation to him that she was filing an appeal, that she nonetheless had not done so a matter of only months, not years, after the direct appeal time had expired.

The parties therefore shall address in the prehearing briefing the question of whether the Ninth Circuit's remand order contemplates, or even permits, a post-remand

inquiry by this Court into whether Valerio is not entitled to equitable tolling because he allegedly could have or should have engaged in more extensive efforts earlier to independently determine whether an appeal in fact had been filed after defense counsel had told him that she would file one.

*Second*, the parties shall address (a) whether Ninth Circuit law requires petitioner to affirmatively demonstrate diligence through to the filing of the federal petition under the Circuit's "stop clock" approach to equitable tolling, and (b) if Ninth Circuit law does *arguendo* require such a demonstration, whether Valerio factually did exercise such diligence through to the filing of the federal petition, including specifically during the second, 337-day otherwise untolled period after June 17, 2008, up to May 21, 2009.

Subsequent to the Court of Appeals' August 13, 2013, order reversing and remanding in this case, the Ninth Circuit adopted the "stop clock" approach specifically for equitable tolling in habeas cases in *Gibbs v. Legrand,* 767 F.3d 879 (9th Cir. 2014). Under this approach, an equitable tolling event operates in the same manner as a statutory tolling event, *i.e.* "stopping" the one-year federal limitation "clock" for the duration of the tolling event. *See, e.g., Luna v. Kernan*, 784 F.3d 640, 651 (9th Cir. 2015). Since *Gibbs*, opinions by Ninth Circuit panels and/or judges have debated the impact of *Gibbs* on prior Circuit authority that suggested – albeit not while applying a "stop clock" approach – that a petitioner must demonstrate diligence also after the equitable tolling event ceases. Panels and judges have debated both (a) whether Ninth Circuit law currently is resolved on the point of whether a petitioner or other party must demonstrate diligence also after the equitable tolling event ceases, and (b) what the rule should be under the "stop clock" approach. *Compare Grant v. Swarthout*, 862 F.3d 914, 924-25 & n.9 (9th Cir. 2017), *Bobadilla v. Gipson*, No. 14-56461, 679 Fed.Appx. 600, 601-02 & n.1 (9th Cir., March 8, 2017) (Murguia, dissenting), *and Knight v. California Department of Corrections*, Nos. 11-17350 & 14-16262, 629 Fed.Appx. 817, 818 (9th Cir., Nov. 5, 2015), *with In re Milby*, 875 F.3d 1229, 1233-34 (9th Cir. 2017) (in bankruptcy context), *and Luna*, 784 F.3d at 651-52. *See also Zamudio-Reyes v. Becerra*, No. 15-15518, 708 Fed.Appx. 463, 464

(9th Cir., Jan. 9, 2018) (suggesting that *Gibbs* held that the proper inquiry is whether the petitioner exercised reasonable diligence during the equitable tolling event, not after).

In the present case, there are two otherwise untolled periods potentially in dispute, being (1) a 318-day period after August 12, 2002, up to June 27, 2003, and (2) a 337-day period after June 17, 2008, up to May 21, 2009. If, following an evidentiary hearing, the Court ultimately were to find that Valerio is entitled to equitable tolling for the first period – or for at the very least 290 of those 318 days – that would be a sufficient number of days under the Circuit's "stop clock" approach to potentially overcome the limitation defense. In such a circumstance, Valerio would have a total of, at worst, only 365 or less untolled days. In that circumstance, the above-described issues debated within the Ninth Circuit would come to the fore in the present case.

The parties therefore shall address (a) the legal issue of whether a petitioner must demonstrate diligence also after an equitable tolling event ceases under controlling Ninth Circuit law, (b) if so, the factual issue of whether Valerio engaged in such diligence in this case during the potentially relevant times, including the second, 337-day period.

At the evidentiary hearing, the parties of course may make an appropriate record of the facts underlying their positions in order to preserve their factual and legal arguments for possible later review. The parties further may introduce evidence subject to reservation as to an alternative legal position regarding the materiality of the evidence under, *inter alia*, the remand order. However, the Court wishes to have the issues outlined herein, including the issue concerning the scope of the inquiry on remand, addressed in the prehearing memoranda heading into the hearing.

Counsel further should not assume that post-hearing memoranda or other further serial briefing of tolling-related issues will be ordered as a matter of course following the hearing. The Court is seeking to bring all equitable tolling related legal and factual issues to a head for a resolution in the district court via the evidentiary hearing and the following findings, conclusions and order. The Court potentially may rule either from the bench following the hearing or thereafter without further briefing.

IT THEREFORE IS ORDERED that the matter is set for an evidentiary hearing for 9:00 a.m. on Friday, June 28, 2019, in Courtroom 7D, Lloyd D. George United States Courthouse, 333 Las Vegas Blvd., Las Vegas, Nevada, on all factual issues pertaining to petitioner's claim of equitable tolling of the federal limitation period.

IT FURTHER IS ORDERED that counsel shall complete the following pre-hearing procedures:

1. **Exchange of Preliminary Witness and Exhibit Lists and Stipulations.** No later than **twenty-eight (28) days** prior to the hearing, counsel shall confer together either in person or by telephone and shall exchange preliminary exhibit and witness lists, exchange (either in person or indirectly such as via mail, email or fax) any exhibits not already possessed by opposing counsel, and discuss stipulations as to authenticity and any evidentiary objections.

2. **Final Witness and Exhibit Lists and Evidentiary Objections.** No later than **twenty-one (21) days** prior to the hearing, counsel shall jointly file a consolidated final list of the witnesses and exhibits to be offered jointly and/or by each party and which shall further identify any evidentiary objections that may be anticipated in advance of the hearing. No party will be allowed to introduce over objection any witness or exhibit not listed in the final witness and exhibit list, except that a party may file a supplement no later than **fourteen (14) days** prior to the hearing listing evidence in response to any witness or exhibit identified for the first time in the final list. No objection that may be anticipated in advance of the hearing will be preserved unless raised in the final list.

3. **Depositions.** The parties may introduce the depositions taken in discovery in lieu of live testimony by the witnesses, except as to controverted testimony where the Court will be called upon to make a credibility determination, in which case the witness must be called live.

4. **Length of Hearing; Interpreters; Other Housekeeping Matters.** The Court anticipates that the hearing possibly may take up to a full day. If counsel (a)

anticipate that the hearing will run longer than one full day, (b) anticipate that an interpreter will be needed for a party or a witness, or (c) have other housekeeping matters to address regarding the hearing, they shall contact Courtroom Administrator Aaron Blazevich at 702-464-5421 regarding same no later than **twenty-one (21) days** prior to the hearing.

5. **Prisoner Transport Order and Subpoenas of Non-Prisoner Witnesses.** No later than **fourteen (14) days** before the hearing, petitioner's counsel shall submit an order to transport prisoner to secure petitioner's presence at the hearing; and any party wishing to call any other prisoner to testify similarly shall submit an order to transport prisoner by that date. No continuance will be granted for failure to secure the attendance of the petitioner or any other prisoner unless an order to transport prisoner was timely sought. Similarly, no continuance will be granted for failure to secure the attendance of a non-prisoner witness who was not seasonably subpoenaed. **Each prisoner-transport order shall include the following sentence as the final paragraph: "The Clerk of Court additionally shall provide a copy of this order to the Marshal's Las Vegas office."**

6. **Pre-hearing Memoranda.** No later than **seven (7) calendar days** prior to the hearing, counsel for petitioner and for respondents each shall file a pre-hearing memorandum setting forth the evidence that they expect to present at the hearing together with their legal argument regarding the issues to be raised by the anticipated evidence presented by the parties at the hearing.

7. **Exhibit Binders.** On the morning of the hearing, counsel for petitioner and for respondents each shall provide to the Courtroom Administrator three binders or sets of exhibit binders, with one such binder or set of binders containing the exhibits offered for introduction at the hearing, and the other binder or sets being for the staff attorney and trial judge. Each counsel additionally shall provide one additional binder or set of binders to opposing counsel. If joint exhibits are submitted, counsel shall arrange between themselves similarly to provide to the

Courtroom Administrator three binders or sets of exhibit binders containing the joint exhibits. The "original" exhibits within the binder(s) for the witness each shall be marked by an exhibit sticker, prior to being copied for the other sets of binders. Any lengthy exhibits that are not otherwise internally numbered and that likely will be referenced in detail during live testimony shall be Bates-number stamped for ease of reference during the testimony. If electronic exhibits are provided to the Court, only two physical binders or set of binders shall be required for the Court and the trial judge's copy will not be required. Electronic exhibits must be submitted on a thumb drive, CD, DVD, or hard drive, and will be kept by the Court.

DATED THIS March 4, 2019

_____
Gloria M. Navarro, Chief Judge
United States District Court