UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

GIOVANNI VALERIO,

Petitioner,

v.

ANTHONY SCILLIA, *et al.*,

Respondents.

Case No. 2:10-cv-01806-GMN-EJY

ORDER

This represented habeas matter under 28 U.S.C. § 2254 comes before the Court on a continuing post-remand inquiry regarding the timeliness of the petition and further following upon recent memoranda filed by the parties.  (ECF Nos. 91 & 92.)

### *Background*

Petitioner Giovanni Valerio challenges his Nevada state conviction, pursuant to a guilty plea, of six counts of robbery with the use of a deadly weapon.  With the weapon sentencing enhancements, he is serving twelve consecutive terms of 26 to 120 months, amounting in the aggregate to a combined sentence of 26 to 120 years.  (ECF No. 11-3, at 26-27.)

The time period for appealing the July 11, 2002, judgment of conviction expired on Monday, August 12, 2002, without Valerio having taken a direct appeal.[1]

_____

[1] As the Court noted in its September 22, 2017, order (ECF No. 66), prior orders instead had used either August 10, 2002, or August 11, 2002.  Those dates fell in the weekend; and the 30-day time period to appeal did not actually expire until the following judicial day on the Monday.  It does not appear that the motion for reconsideration of sentence filed on July 22, 2002, (ECF No. 11-3, at 29-33) constituted a tolling motion under Nevada Rule of Appellate Procedure 4(a)(4).  *Cf. Phelps v. State*, 111 Nev. 1021, 1022, 900 P.2d 344, 345 (1995) (motion for reconsideration not a tolling motion).  The motion in any event was denied on August 2, 2002, and the motion thus would have extended the appeal time to only Tuesday, September

1

1   After 318 days had elapsed, Valerio filed a timely state postconviction petition on

2   June 27, 2003, alleging, inter alia, that he had been denied his right to appeal through

3   ineffective assistance of counsel.  The Supreme Court of Nevada agreed and allowed

4   Valerio to pursue a *Lozada* petition[2] to present direct-appeal claims.  Proceedings were

5   pending on the initial state petition and/or the *Lozada* petition authorized thereby

6   substantially continuously from June 27, 2003, through to the issuance of a remittitur in

7   the state supreme court following the disposition of the *Lozada* petition on June 17, 2008.

8   (ECF Nos. 11-4 through 11-7.  *See also* ECF No. 14, at 4 n.3.)[3]

9   After another 337 days had elapsed, on May 21, 2009, petitioner filed another state

10   postconviction petition.  The Supreme Court of Nevada ultimately determined that the

11   petition was timely, but the court denied relief on September 29, 2010, variously on the

12   merits and under the doctrine of law of the case.  The remittitur issued on October 27,

13   2010.  (ECF Nos. 11-7 & 11-8.)

14   The federal petition was constructively filed on or about October 11, 2010, and was

15   actually filed on October 15, 2010, with both dates being prior to the issuance of the

16   remittitur in the last state court proceeding.

17   The Court dismissed the petition as untimely in 2011.  (ECF Nos. 14 & 15.)  The

18   Ninth Circuit reversed and remanded nearly seven years ago in August 2013.  (ECF Nos.

19   24-25.)  The Court of Appeals remanded "for an evidentiary hearing or for other further

20   factual development as may be necessary to determine whether Valerio has exercised

---

3, 2002, after the Labor Day holiday, if it instead properly was viewed to be a tolling motion.  (ECF No. 11-3, at 43-44.)

[2] As discussed further *infra*, at that time under Nevada practice, a petition pursuant to *Lozada v. State*, 110 Nev. 349, 871 P.2d 944, 950 (1994), *rejected on other grounds*, *Rippo v. State*, 134 Nev. 411, 426 n.11, 423 P.3d 1084, 100 n.11 (2018), allowed a petitioner to pursue all issues that he otherwise could have pursued in a timely direct appeal instead via a state postconviction petition.

[3] As also discussed in the September 22, 2017, order, the Court previously has counted the elapsed days for this period instead at 321 in earlier orders.  This variance is due in part to the different date of expiration applied for the direct appeal time.  Moreover, neither the August 12, 2002, day on which the appeal time expired nor the first day of the June 27, 2003, statutory tolling event count against the federal limitation period.  Neither the earlier orders nor the order of remand from the Ninth Circuit preclude the Court from correctly calculating the running of the federal limitation period in determining whether equitable tolling renders the federal petition timely.  (*See* ECF No. 66, at 2 n.4; *id.*, at 11 & n.19.)

1  reasonable diligence." (ECF No. 24, at 3.) Since the remand, the parties have briefed

2  multiple issues; the Court has allowed discovery; and the action further has been stayed

3  temporarily to await a potentially key decision by the Ninth Circuit *en banc* in *Smith v.*

4  *Davis*, 953 F.3d 582 (9th Cir. 2020) (*en banc*).

5                                    ***Discussion***

6          ***The Date After Which the Federal Limitation Period Starts to Run***

7          In his memorandum, Valerio, *inter alia*, challenges the Court's multiple prior

8  holdings that the federal limitation period began running from the expiration of the time to

9  file a timely direct appeal, *i.e.*, after August 12, 2012. He urges in his current briefing that

10  the Ninth Circuit decision relied on previously by the Court, *Randle v. Crawford*, 604 F.3d

11  1047 (9th Cir. 2010), effectively has been overruled on an underlying point of Nevada

12  state law by intervening state supreme court authority.

13          In the context relevant here, under 28 U.S.C. § 2244(d)(1)(A), a one-year

14  "limitation period shall run from . . . the date on which the judgment became final by the

15  conclusion of direct review or the expiration of the time for seeking such review."[4]

16          In *Lozada*, *supra*, the Ninth Circuit previously had ruled that Lozada had been

17  denied his right to appeal by ineffective assistance of counsel; this Court thus

18  conditionally granted the writ subject to the State allowing Lozada to take a delayed

19  appeal within a reasonable time; and Lozada thereafter filed a notice of appeal in the

20  state district court. 110 Nev. at 351-52, 871 P.2d at 945-46.

21          Significantly for the present issue, on the ensuing state court appeal, the Supreme

22  Court of Nevada found that the Ninth Circuit had "fail[ed] to recognize" governing Nevada

23  state law regarding the availability of a direct appeal:

24              This court lacks jurisdiction to entertain Lozada's
                appeal. Lozada filed a notice of appeal from his 1987
25              judgment of conviction well after the thirty-day appeal period
                prescribed by NRAP 4(b). We have consistently held that an
26              untimely notice of appeal fails to vest jurisdiction in this court.

27  _____

28  [4] Section 2244(d)(1) provides that the one-year limitation period "shall run from the latest of" four possible triggering dates. The other three possible trigger dates in subparagraphs (B) through (D) are not pertinent to the specific issue raised by Valerio in his recent memorandum that is discussed in the text.

1
2

> *See, e.g., Jordon v. Director, Dep't of Prisons*, 101 Nev. 146, 696 P.2d 998 (1985). We must, therefore, dismiss Lozada's appeal for lack of jurisdiction.

3
4
5
6

> In light of the Ninth Circuit's failure to recognize the jurisdictional limitations on our authority to grant Lozada an appeal, we deem it necessary to detail Lozada's possible remedies. Our decision does not leave Lozada without a complete and adequate remedy. Lozada may obtain relief in the district court by filing a petition for a writ of habeas corpus.

7    *Id.*, at 352, 871 P.2d at 946.

8      The state supreme court further established that the relief available to the petitioner

9 on such a petition – which was made available to remedy the unconstitutional deprivation

10 of a right to a direct appeal – would be substantially the same as the relief that would

11 have been available on a direct appeal.  The petitioner therefore could raise in such a

12 petition "any issues which he could have raised on direct appeal."  *Id.*, at 359, 871 P.2d

13 at 950.  Further, the petitioner would be entitled to counsel, appointed if necessary.  The

14 court stated that "[b]ecause convicted persons have the right to counsel on direct appeal,

15 the appointment of counsel is essential to remedy the loss of the right to appeal."  *Id.*

16 Concluding that the procedure afforded thus "provides . . . a complete remedy for the

17 alleged denial of [the] right to appeal," the state supreme court therefore dismissed the

18 then pending appeal for lack of jurisdiction without prejudice to the right to file instead a

19 postconviction petition in the state district court.  *Id.*[5]

20      Thereafter, the United States Supreme Court held in *Jimenez v. Quarterman*, 555

21 U.S. 113 (2009), that the grant of an out-of-time direct appeal resets the start of the federal

22 limitation period under § 2244(d)(1)(A), with the limitation period then starting to run fully

23 anew in relation to that new appeal opportunity rather than the expired original appeal

24 opportunity.

25
26
27
28

[5] Subsequently, Rule 4(c) of the Nevada Rules of Appellate Procedure (NRAP) was amended to allow for the filing of an untimely appeal where a state or federal court has found that the convicted individual had been unconstitutionally deprived of a right to a direct appeal.  This subsequent change in NRAP 4(c) has no bearing on the present case.  All pertinent events in this case occurred prior to the change in the law, and the *Lozada* petition remedy discussed in the text was the only available remedy under Nevada law at the pertinent times.  Any issues regarding the proper application of § 2244(d)(1)(A) to untimely appeals under NRAP 4(c) are not presented in this case.

4

In *Randle*, *supra*, the petitioner argued that the *Jimenez* holding should be extended to a Nevada *Lozada* petition because a decision on a *Lozada* petition "is equivalent to a decision on an out-of-time direct appeal."  604 F.3d at 1056.

The Ninth Circuit rejected this argument, based upon the holding in *Lozada* that an out-of-time direct appeal then was unavailable under Nevada state law:

> [W]e disagree with Randle's argument on the merits because *Jimenez* is distinguishable. In that case, the petitioner missed his opportunity to file a direct appeal from his conviction and sentence in state court. [555 U.S. at 115-16.] He then filed a state habeas petition, arguing that he was denied his right to appeal. [*Id*., at 116.] The state court of appeal agreed, and [the court] granted the *petitioner the right to file an out-of-time appeal*, which the petitioner promptly pursued. *Id*. The petitioner's conviction was ultimately affirmed. [*Id*.] After the time in which to petition the Supreme Court for *certiorari* had expired, the petitioner filed a federal habeas petition. [*Id*., at 117.]  The district court dismissed the petition as untimely, rejecting the petitioner's argument that the "conclusion of direct review" in his case occurred when the time expired for seeking *certiorari* review of the decision in his out-of-time appeal. [*Id*., at 117-18.] The Fifth Circuit denied a certificate of appealability on the timeliness issue. [*Id., at* 118.]

> The Supreme Court reversed the judgment of the Fifth Circuit, reasoning that "direct review cannot conclude for purposes of § 2244(d)(1)(A) until the availability of direct appeal to the state courts, and to this Court, has been exhausted." [*Id.* at 119] (internal citations and quotation marks omitted). In *Jimenez*, "the order granting an out-of-time appeal restored the pendency of the direct appeal and petitioner's conviction was again capable of modification through direct appeal to the state courts and to this Court on *certiorari* review." [*Id.* at 120.] (internal citation and quotation marks omitted). Thus, the Court held, "'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review' must reflect the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking review of that appeal." [*Id.* at 121.] *The Court emphasized that this holding is a "narrow one" based on the "most natural reading of the statutory text."* [*Id.* at 119, 121.]

> In the case before us, Randle argues that the Nevada Supreme Court's decision on his first state habeas petition *is equivalent to* a decision on an out-of-time direct appeal. *But*

> *unlike Jimenez, the Nevada Supreme Court never granted Randle leave to file an out-of-time direct appeal. Rather, the state supreme court explicitly stated that an untimely direct appeal was foreclosed by state rules, and that "[a]n untimely notice of appeal fails to vest jurisdiction in this court." At no point did the Nevada Supreme Court "restor[e] the pendency of the direct appeal," nor was "petitioner's conviction ... again capable of modification through direct appeal to the state courts and to [the Supreme Court] on certiorari review."* Jimenez, [555 U.S. at 120] (internal citation omitted). Randle sought to restore his direct appeal, and that request was rejected by the Nevada Supreme Court. *Although Randle was entitled to present, pursuant to Lozada, the arguments that he would have presented on direct appeal in his state postconviction relief proceeding,* his direct appeal was not, and could not be, reinstated. *Jimenez* therefore does not apply, and we conclude that the one-year limitations period did not begin on December 2, 2002, [following the conclusion of the *Lozada* petition proceedings].

604 F.3d at 1056-57 (emphasis added).

In the present case, prior to the federal appeal, the Court held in part pertinent to this issue that Valerio's judgment of conviction became final and the federal limitation therefore began running from the date on which the time to file a state court direct appeal expired in August 2002. (ECF No. 14, at 4.)[6]

On appeal to the Ninth Circuit, Valerio, through counsel, argued, *inter alia*, that the Court erred in holding that the federal limitation period started running in August 2002 because his conviction instead was not final until after the expiration of the time to seek *certiorari* review from the *Lozada* proceeding. Valerio urged, *inter alia*, that *Randle* should not be followed because it was "in clear tension" with a later panel decision in *Thompson v. Lea*, 681 F.3d 1093 (9th Cir. 2012). (*See* Ninth Circuit No. 11-16384, ECF No. 14, at 18-28; *id.*, ECF No. 24, at 6-21.) *Thompson* held that the California state supreme court's initial grant of review of a petition to review a lower appellate court's order denying a motion to reinstate a direct appeal reset the start of the federal limitation period under § 2244(d)(1)(A) and *Jimenez*. 681 F.3d at 1094.

_____

[6] Valerio was *pro se* in this Court at the time. The Ninth Circuit granted his motion for counsel during the appeal. *Randle* had been decided by the time of this Court's initial ruling on this issue in 2011.

6

1
2
3
4

The Ninth Circuit reversed and remanded on other grounds.  The Court of Appeals expressly stated that "[w]e need not, and do not, reach the merits of any other issue urged on appeal, including Valerio's claim that his conviction was not final until after the adjudication of his *Lozada* petition."  (ECF No. 24, at 3.)[7]

5
6
7
8
9
10
11
12
13

On remand, Valerio, *inter alia*, pursued his argument that the proceedings on his *Lozada* petition reset the start date of the federal limitation period under § 2244(d)(1)(A) and that the prior published panel decision in *Randle* should not be followed because of the later published panel decision in *Thompson*.  This Court rejected Valerio's argument, concluding that it was bound by the directly apposite and binding authority in *Randle*. (ECF No. 38, at 4-6.)  In a subsequent order, the Court affirmed that it had "no occasion to reconsider its alternative holding that the limitation period began to run instead after the expiration of the time to appeal the original judgment," as per Ninth Circuit authorities cited previously, which included *Randle*.  (ECF No. 66, at 11-12 n.19.)

14
15
16
17
18
19
20
21
22
23

In his most recent filing, Valerio urges that two unpublished state supreme court decisions "indicate" that the Ninth Circuit did not properly interpret *Lozada* in *Randle*. Valerio suggests that the decisions disapprove of *Randle* because the decisions establish that the *Lozada* remedy – quoting Valerio – "has the same effect as a re-opened appeal," has "the same purpose and effect as a direct appeal," and is "the same as a direct appeal." He relies on a 2011 decision holding that a later claim of ineffective assistance of *Lozada* counsel should have been addressed as a claim of ineffective assistance of appellate counsel.  He relies also on a 2012 decision holding that the state limitations period began to run after the remittitur date from the *Lozada* procedure because it took the place of the direct appeal.  (ECF No. 91, at 5-7, and unpublished decisions cited therein.)[8]

24
25
26

[7] Thus, neither the law of the case doctrine nor the mandate rule preclude this Court from reaching this issue.  (*See also* ECF No. 66, at 11-12.)  Moreover, a federal district court has plenary authority to reconsider prior interlocutory rulings in the case without regard to the restrictions of Rules 59 and 60 of the Federal Rules of Civil Procedure, which apply only to post-judgment challenges.  *See, e.g., City of Los Angeles, Harbor Division v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001).

27
28

[8] Of two additional "see also" citations referenced by Valerio, a 2014 case adds little of additional direct import; and a 2009 decision was decided before *Randle* and thus could not disapprove of *Randle*. Valerio repeatedly refers to this argument as a "statutory tolling" argument.  The issue clearly is not one of

7

1       The two unpublished decisions do not at all undercut *Randle*.

2       The holding in Randle does not turn upon whether a *Lozada* petition is functionally

3   "the same as" a direct appeal.  The *Randle* panel did not contest the petitioner's argument

4   there that a decision on a *Lozada* petition was "the equivalent to a decision on an out-of-

5   time direct appeal."  604 F.3d at 1056.  The *Randle* panel indeed explicitly acknowledged

6   that the petitioner "was entitled to present, pursuant to *Lozada*, the arguments that he

7   would have presented on direct appeal."  604 F.3d at 1057.  The *Randle* panel decision

8   therefore was not based upon some difference that rendered the *Lozada* remedy not

9   functionally similar to the direct-appeal remedy, *i.e.*, some feature that would make the

10  *Lozada* remedy functionally "not the same as" a direct appeal.

11      Rather, *Randle* relied expressly and exclusively on the established rule stated in

12  *Lozada* that an untimely state appeal then was foreclosed by state rules and that an

13  untimely appeal failed to vest jurisdiction in the state appellate courts.  604 F.3d at 1056-

14  57.  The pertinent point for the panel was that "the Nevada Supreme Court never granted

15  Randle leave to file an out-of-time direct appeal" because it could not do so.  604 F.3d at

16  1056.  This state law rule, the one actually relied upon in *Randle*, has not at all been

17  disapproved of by subsequent decisions of the Supreme Court of Nevada.  Indeed, to this

18  day, the Supreme Court of Nevada continues to cite *Lozada* for the still viable rule that

19  an untimely direct appeal fails to vest jurisdiction in that court, subject only to a

20  subsequent rule amendment that had no application to this case.  *See, e.g., Sparrow v.*

21  *State*, No. 81301, 2020 WL 3888749 (Nev. July 9, 2020) (unpublished).[9]

---

22  statutory tolling of a *running* limitation period but instead is one of when the limitation period *starts* to run,

23  or in this instance restarts fully anew.  That is, the issue is not one of stopping a running limitation period
    by statutory tolling under § 2244(d)(2) but instead is one of when the limitation period starts (or restarts fully

24  anew) under § 2244(d)(1)(A).  The four alternatives in § 2244(d)(1), including subparagraph (A), all function
    essentially as accrual rules vis-à-vis the federal limitation period, *i.e.*, they determine when the federal

25  limitation period *begins* to run as against an otherwise ripe claim.  None of those four alternatives set forth
    a statutory-tolling rule, which instead would concern the stopping, *i.e.,* the suspension, of *an already running*

26  limitation period.  While the Court previously also has used the incorrect statutory-tolling phraseology in
    prior orders, it clarified the distinction in the September 22, 2017, order.  (ECF No. 66, at 11 n.19.)

27      [9] In his prior briefing in the Ninth Circuit, Valerio focused additionally on the fact that *certiorari* review

28  can be sought from a final state appellate decision denying relief on a *Lozada* petition.  Valerio invoked a
    passage in *Jimenez* that states that, after the state court granted *an out-of-time direct appeal*, the

The unpublished decisions relied upon by Valerio thus neither explicitly disapprove of nor even implicitly undercut any Nevada state law premise relied upon by the panel in *Randle*.

Moreover, the 2011 and 2012 unpublished decisions relied upon by Valerio do not constitute binding precedent in the state appellate courts and cannot even be properly cited in those courts.  Under NRAP 36(c)(2) and (3), an unpublished disposition does not constitute mandatory authority in other cases; and a party may cite an unpublished state supreme court disposition "for its persuasive value, if any" only if it was issued on or after January 1, 2016.

Moreover, neither decision even cites *Randle*.  In contrast, in the decision upon which Valerio cites to exemplify the power of a state supreme court to effectively overrule a federal circuit court on a point of state law, the Supreme Court of Nevada explicitly cited the prior Ninth Circuit case of which it disapproved and criticized that federal decision in extensive reasons.  *See Babb v. Lozowski*, 719 F.3d 1019, 1027-30 (9th Cir. 2013), *overruling on other grounds recognized in*, *Moore v. Helling*, 763 F.3d 1011 (9th Cir. 2104).  *Randle*, however, *never* has been even cited in the Nevada state appellate courts, in a single published or even unpublished decision.

Valerio's argument thus would have this Court conclude that the Supreme Court of Nevada effectively overruled a Ninth Circuit panel decision on a point of Nevada law in

"petitioner's conviction was again capable of modification through direct appeal to the state courts and to this Court on certiorari review."  555 U.S. at 120.  Valerio argued that, after an adverse decision by the state supreme court on a *Lozada* petition "[t]he Nevada Supreme Court's decision was then capable of modification through a writ of certiorari to the Supreme Court."  (Ninth Circuit No. 11-16384, ECF No. 14, at 21.)  However, the potential availability of *certiorari* review is a distinction without a difference.  *Certiorari* review can be sought from any final decision of the state's highest level of appellate review that presents a federal question, including, *inter alia*, a final appellate decision denying relief on a standard, non-*Lozada*, state postconviction petition.  The potential availability of *certiorari* review does not make a *Lozada* petition a "direct appeal" any more so than it makes a standard state postconviction petition a direct appeal.  The salient point, for the *Randle* panel, was that, because of the absence of jurisdiction over an untimely direct appeal under state law, the conviction was not "'again capable of modification *through direct appeal* to the state courts and to [the Supreme Court] on certiorari review.'"  *Randle*, 604 F.3d at 1057 (quoting *Jimenez*, with bracketed material added in *Randle* and italic emphasis added herein).  *The point* being made did not concern the availability of *certiorari* review but instead was that *a direct appeal* was not available under state law.  The mere fact that *certiorari* review potentially was available did not make a *Lozada* petition – or any other state court procedure – a direct appeal.

state court decisions that: (a) did not even mention the purportedly overruled panel decision in the first instance, (b) were unpublished and thus explicitly had no binding precedential value under express Nevada appellate rules governing citation of unpublished decisions, and (c) most significantly, *did not overturn* the relevant point of state law relied upon by the panel, which state law rule *continues* to be adhered to in state supreme court decisions.  That is a singularly unpersuasive argument.

The Court therefore holds for the third – and final, absent new intervening authority directly on point – time that the federal limitation period started running in this case after the expiration of the time to file a timely direct appeal, *i.e.*, after August 12, 2002.[10]

_____

[10] Valerio additionally urges that this Court "implicitly recognized the exact nature of the *Lozada* proceedings" when it found that his May 21, 2009, timely state petition would statutorily toll any then-still-running federal limitation period.  (ECF No. 91, at 7.)  This subsidiary argument is even less persuasive.  The state supreme court ultimately found that that state petition was timely.  Such a determination by a state high court is "the end of the matter" regarding whether the petition gives rise to statutory tolling under § 2244(d)(2).  *E.g., Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005).  This Court's acceptance of the *state supreme court's* finding that the May 21, 2009, petition was timely under state law connotes no determination by this Court other than a recognition that the *state court's* determination is conclusive on that specific point under controlling Supreme Court precedent.  No other inference can be drawn from that recognition.  This simply is another fundamentally flawed argument.

Valerio further suggests that *Smith* "calls for this Court to reconsider how *Randle* applies in light of *Smith*."  (ECF No. 91, at 5.)  Nothing in *Smith*, which concerned equitable tolling independent of the federal limitation statute, leads to a reexamination of *Randle*, which concerned instead the time from which the limitation period begins to run under § 2244(d)(1)(A).  As discussed further *infra*, the *en banc* decision in *Smith* rejecting the application of a "stop-clock" approach to equitable tolling adopted in later Ninth Circuit cases in large measure simply returns the law to principles that already had been long present in Supreme Court and the Ninth Circuit decisions.  The Ninth Circuit and this Court had been applying these principles for years prior to the later application of a stop-clock approach specifically to cases arising under AEDPA.  In other words, *Smith* does not lead to a massive reset where every prior decision applying any provision of § 2244(d) inherently necessarily must be reexamined.  *Smith* does not call *Randle* into question.

The Court definitively rejects Valerio's arguments regarding the *Lozada* petition now so that the parameters for the proper analysis of the time-bar issue are clearly established for further proceedings on the issue in the district court.  The directly apposite *Randle* continues to be the controlling authority in the district court.  However, the district court rulings herein of course do not preclude Valerio from possibly later seeking to challenge *Randle* directly in the Ninth Circuit on a petition for initial and/or rehearing *en banc* review, based on the alleged conflict with *Thompson*.  The underlying issue of when the federal limitation period begins to run would appear to be outcome determinative on the limitation defense.  If the *Lozada* proceedings did reset the running of the federal limitation period under § 2244(d)(1)(A), then the limitation period would not begin to run until after August 18, 2008, the date on which the time period to seek *certiorari* review of the May 20, 2008, order of affirmance on the *Lozada* petition expired.  The timely May 21, 2009, state petition thereafter would statutorily toll the federal limitation period past the constructive filing date of the federal petition.  Less than 365 days elapsed between August 18, 2008, and May 21, 2009.

For the proceedings in the district court, however, the Court – once again, and for the final time based on current caselaw – reaffirms that the issue is controlled by the Ninth Circuit's directly apposite *Randle* decision.

10

*The Impact of Smith on a Possible Evidentiary Hearing*

In *Smith*, the *en banc* court rejected the application of a "stop-clock" approach to equitable tolling that a panel had applied to federal habeas cases arising under AEDPA[11] in *Gibbs v. Legrand*, 767 F.3d 879 (9th Cir. 2014).  953 F.3d at 586 & 599 ("we today reject the stop-clock approach").   Under that firmly-rejected approach, an extraordinary circumstance would stop, or suspend, the running of the federal limitation period for the duration of the extraordinary circumstance, substantially as statutory tolling operates. *See generally* 953 F.3d at 586 & 589.  *Smith* ended the approximately six-year run of the application of the stop-clock approach to AEDPA cases in the Ninth Circuit.

Smith instead returned the law in this area to prior, long-established principles in Supreme Court and Ninth Circuit caselaw, established principles that had been applied in countless AEDPA cases in this Court prior to *Gibbs*.  *See* 953 F.3d at 592-95; *see, e.g., Lindolfo Thibes v. Robert LeGrand*, No. 3:11-cv-00339-MMD-WGC, ECF No. 33, at 5-8 (D. Nev. July 26, 2013).   Under that caselaw, an extraordinary circumstance did not automatically stop the limitation period from running for a specific interval.   The petitioner instead had to demonstrate, *inter alia*, a causal connection between the extraordinary circumstance and their failure to file a timely federal petition.   *See generally* 953 F.3d at 589 & 595.  Thus, for example, all else being equal, an extraordinary circumstance lasting for 30 days might have a markedly different impact on the equitable tolling analysis from a causation perspective if it occurred at the very end of the one-year limitation period as opposed to at the very beginning.   Under the rejected stop-clock approach, that 30 days instead would have been categorically excluded from the calculation of the limitation period and further would have been excluded without regard to whether the extraordinary circumstance ultimately had a causal relationship to the untimely filing.

*Smith* restated what had been, prior to *Gibbs*, well-established law applied in AEDPA cases in this Court.   The *en banc* court noted the following statement of the governing standard for equitable tolling in *Holland v. Florida*, 560 U.S. 631 (2010):

---

[11] The Antiterrorism and Effective Death Penalty Act of 1996.

A petitioner seeking equitable tolling bears the burden of establishing two elements: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."

*Smith*, 953 F.3d at 588, quoting *Holland*, 560 U.S. at 649 (quoting prior authority); *see also Smith*, 953 F.3d at 595.

The *en banc* court expounded on how these elements are to be applied in AEDPA cases in the following two related holdings:

> *D. The Proper Rule of Equitable Tolling of Statutes of Limitations*
>
> In view of the historic practice of courts of equity and modern Supreme Court precedent governing equitable tolling, we make two related holdings. First, for a litigant to demonstrate "he has been pursuing his rights diligently," *Holland*, 560 U.S. at 649 . . ., and thus satisfies the first element required for equitable tolling, he must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, *but before and after as well, up to the time of filing his claim in federal court*. This rule is in accord with the traditional concept that equity requires diligence and is also consistent with recent Supreme Court practice. . . . . On [the reasonable-diligence] issue the rule remains that "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *Holland*, 560 U.S. at 653 . . . (citations omitted). In determining whether reasonable diligence was exercised courts shall "consider the petitioner's overall level of care and caution in light of his or her particular circumstances," *Doe v. Busby*, 661 F.3d 1001, 1013 (9th Cir. 2011), and be "guided by 'decisions made in other similar cases ... with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.'" *Fue* [*v. Biter*], 842 F.3d [650,] 654 [(9th Cir. 2016) (*en banc*)] (quoting *Holland*, 560 U.S. at 650, . . .). What we make clear is that it is not enough for a petitioner seeking an exercise of equitable tolling to attempt diligently to remedy his extraordinary circumstances; *when free from the extraordinary circumstance,* he must *also* be diligent in actively pursuing his rights.
>
> Second, and relatedly, it is only when an extraordinary circumstance prevented a petitioner acting with reasonable diligence from making a timely filing that equitable tolling may

be the proper remedy. This rule aligns with the flexible and fact-specific nature of equity and is directed by Supreme Court precedent. To be clear, this rule does not impose a rigid "impossibility" standard on litigants, and especially not on "pro se prisoner litigants—who have already faced an unusual obstacle beyond their control during the AEDPA limitation period." *Fue*, 842 F.3d at 657 (quoting *Sossa v. Diaz*, 729 F.3d 1225, 1236 (9th Cir. 2013)). In evaluating whether an "extraordinary circumstance stood in [a petitioner's] way and prevented timely filing," a court is not bound by "mechanical rules" and must decide the issue based on all the circumstances of the case before it. *Holland*, 560 U.S. at 649–50, . . . (internal quotation marks omitted).

953 F.3d at 598-600 (emphasis added).

In his recent memorandum, petitioner asserts that "under *Smith*, there seems to be an open question about whether Valerio now has to show reasonable diligence for that (untolled) time that elapsed between his *Lozada* [petition, which he calls instead a direct appeal] ending on June 17, 2008, through [the] filing [of] his state post-conviction petition on May 21, 2009." (ECF No. 91, at 4.)  That is, he suggests that there is an open question under *Smith* as to whether he must show that he exercised reasonable diligence during the second, 337-day period outlined in the background, *supra*, at 2.  Valerio further maintains that he heretofore "has never had to make that argument [that he exercised reasonable diligence during the 337-day period], and counsel would need time to investigate before presenting it." (ECF No. 91, at 7.)  Valerio represents that if the Court (a) rejects his argument as to effect of the *Lozada* petition (which it has, *supra*), and (b) determines that *Smith* requires that he show reasonable diligence during the 337-day period, "then he must be given the opportunity to develop those facts and the parties should be permitted to brief the issue."  (*Id.*, at 8.)  He posits that "[u]pon the completion of the briefing this Court will be positioned to decide if the hearing should be expanded to include the elapse of time after the *Lozada* proceedings ended and before Valerio filed his state post-conviction petition."  (*Id.*)

The Court is not persuaded that there is any "open question" as to whether *Smith* requires Valerio to demonstrate reasonable diligence as to all untolled periods, including

the 337-day period.  *Smith* quite clearly states, consistent with established law prior to *Gibbs*, that a petitioner "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed, *but before and after as well, up to the time of filing his claim in federal court.*"  953 F.3d at 599 (emphasis added); *see also id.*, at 589 ("before and after the extraordinary circumstances were dispelled" and "before, during and after the extraordinary circumstance existed"); *id.*, at 593 ("the Supreme Court emphasized Pace's lack of diligence in all time frames, right up to Pace filing his federal petition").

Valerio nonetheless attempts to limit *Smith* by suggesting that the *en banc* case is a "traditional case" that "doesn't include the kind of alternating periods of equitable and statutory tolling that are present here."  Valerio urges that *Smith* apparently only "contemplate[s] the more traditional case in which equitable tolling coming [sic] after statutory [tolling] ends, leading up to the filing of a federal petition."  (ECF No. 91, at 4.)

The Court is not persuaded.  Nothing in the discussion in *Smith*, or in the prior established law that it canvasses, suggests that the principles that it discusses are limited to what Valerio describes as "traditional" cases.  That law has been applied, including by this Court, in myriad different factual and procedural contexts over the years prior to the application instead of a stop-clock approach to AEDPA cases in *Gibbs*.  Nothing limits the application of those established principles from equity to a category of cases that Valerio would cordon off as somehow "traditional" cases.

In this case, 318 days elapsed between the expiration of the time to file a direct appeal on August 12, 2002, and the June 27, 2003, filing of the first timely state postconviction petition that led to the *Lozada* proceedings.  Absent any further statutory tolling or delayed accrual, the federal limitation therefore putatively expired after only another 47 days had elapsed after the June 17, 2008, conclusion of the *Lozada* proceedings, *i.e.*, on Monday, August 4, 2008.  The fact that Valerio later filed a second timely state postconviction petition on May 21, 2009, will make no difference if his federal petition already was time-barred before he filed the second state petition.  *See, e.g., Rudin*

1  *v. Myles*, 781 F.3d 1043, 1056 n.16 (9th Cir. 2015) (a statute of limitations that already

2  has run cannot be tolled thereafter).

3        Valerio's concern about "alternating periods of equitable and statutory tolling" thus

4  misses the mark.  Under settled legal principles, the federal limitation period in this case

5  putatively expired on August 4, 2008, only a day more than 47 days into the second 337-

6  day period.  Valerio does not even reach a last "alternating period" of statutory tolling if

7  he does not overcome the expiration of the limitation period on August 4, 2008.  To do

8  that, he must show that, despite the exercise of reasonable diligence, an extraordinary

9  circumstance prevented him from filing a federal petition before the federal limitation

10  period expired.  *E.g., Smith*, 953 F.3d at 595.  He thus must show under previously

11  established principles that are once again reaffirmed in *Smith* that he exercised

12  reasonable diligence in the period heading into the putative August 4, 2008, expiration

13  date and thereafter through the remainder of the 337-day period prior to statutory tolling

14  otherwise becoming again available.  There is no currently viable caselaw, with the 2014

15  *Gibbs* decision now abrogated, that in effect would give Valerio a "free pass" as to

16  diligence not only up to the August 4, 2008, putative expiration of the federal limitation

17  period but also for nearly ten months thereafter.  Under the prior established law now

18  reaffirmed by *Smith*, Valerio must show reasonable diligence for all periods during which

19  statutory tolling is not available.  There is no open question in that regard.

20        Valerio currently presents no factual basis for a claim of reasonable diligence

21  following the conclusion of the *Lozada* proceedings on June 17, 2008.  If the Court rules

22  on the legal issues raised in the current briefing adversely to Valerio as it has in this order,

23  his counsel then seeks an opportunity to develop those facts.  Valerio posits that the Court

24  – after yet further piecemeal briefing – then will be able to decide if an evidentiary hearing

25  should be expanded to include the period after the *Lozada* proceedings.

26        The pertinent question at this point after *Smith*, however, is not whether an

27  evidentiary hearing should be expanded but rather is whether one should be held at all.

28  If Valerio is unable to present a potentially viable basis for a claim of reasonable diligence

as to all untolled time periods, including the approximately 11 months following the conclusion of the *Lozada* proceedings, then there would be a substantial question as to whether an evidentiary hearing should be held.  A petitioner's failure to demonstrate reasonable diligence for periods as short as five and seven months on the facts presented led to the Supreme Court holding that the petitioner was not entitled to equitable tolling. *See Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005).

The Court therefore will require Valerio, after a reasonable opportunity for internal consultation, to file a motion for an evidentiary hearing supported by specific allegations of fact and competent evidence presented with the motion.

Before discussing the requirements for the motion further, the Court notes the following for context.  The state and federal postconviction litigation of this case spans eighteen years, including now nearly ten years in federal court.  It further has been approaching seven years since the Ninth Circuit remanded this case for further consideration of limitation-period issues.

Typically, all potential issues relating to a time-bar defense in a habeas case can be fully briefed with the necessary factual support in a single round of briefing.  In this case, the Court has directed and/or allowed the parties to subdivide the overall time-bar issue in this case following the remand into multiple subsidiary issues, to brief those issues serially in piecemeal fashion, to obtain a ruling from the Court on a subsidiary issue or issues, and then continue yet further piecemeal briefing on yet additional subsidiary issues.

That ends here.  If subsidiary issues remain to be resolved, the parties must argue in the alternative, with full legal argument and factual support for their position on any such alternatives.  If a party with the burden of proof on an issue fails to provide legal argument and factual support on the issue, then that party will lose on that issue.  There will be no more "kicking the can down the road" for a further opportunity for factual development, for more briefing and/or to a later proceeding.  Requests for such deferral embedded in a brief will be disregarded, and the Court will proceed to a decision.

Accordingly, Valerio's motion for an evidentiary hearing must, *inter alia*:  (a) set forth specific allegations of actual historical fact supported by competent evidence on all material factual issues; and (b) thereby establish a potentially viable basis for equitable tolling in all respects, including demonstrating reasonable diligence during the 337-day period, both before and after the putative expiration of the federal limitation period on August 4, 2008.  If Valerio fails to present sufficient facts to sustain a viable claim of equitable tolling taking into account all untolled time periods, the most probable outcome will be that no evidentiary hearing will be held and the petition instead will be dismissed as time-barred.[12]  The only opportunity that Valerio will be given to tender competent evidence tending to establish a potentially viable factual basis for reasonable diligence for all relevant periods, including the 337-day time period, is with the motion for an evidentiary hearing.  If Valerio does not present specific allegations of actual historical fact supported by competent evidence with the motion, the petition likely will be dismissed as untimely.  If Valerio only defers to a possible evidentiary hearing "to develop" specific facts while presenting only vague and conclusory allegations with the motion, there likely will no evidentiary hearing and the case will be dismissed.  In short, the time to come forward with supporting specific actual historical fact and evidence is *with the motion*, not at some later point or proceeding down the line.

The Court notes that the circumstances relevant to equitable tolling vis-à-vis the 337-day period, and particularly reasonable diligence, typically should concern circumstances that are known to Valerio himself.  A reasonable opportunity for internal consultation should be all that is necessary prior to the filing of a motion for an evidentiary hearing.  While the Court does not wholly foreclose the possibility of discovery on a

---

[12] The Ninth Circuit remanded "for an evidentiary hearing or for other further factual development as may be necessary to determine whether Valerio has exercised diligence."  An evidentiary hearing therefore is not inexorably required if other factual development provides an adequate basis for a decision. The Court of Appeals further directed that "[i]f the court concludes that Valerio diligently pursued his rights then it should consider whether Valerio has otherwise demonstrated that he is entitled to equitable tolling of the one-year limitations period."  (ECF No. 24, at 3.)  If Valerio does not present a potentially viable basis for a claim of reasonable diligence as to all time periods and in particular during the 337-day period, then he will not be entitled to equitable tolling.

1   showing of good cause via a separate motion, again, the facts relied upon to establish

2   reasonable diligence typically should be matters within Valerio's own knowledge.  The hill

3   facing any motion for discovery therefore will be steep.

4          The hill also will be steep vis-à-vis any request for extension.  The Court will allow

5   a ninety-day period for Valerio's counsel to conduct internal investigation and file a

6   supported motion for an evidentiary hearing.  That is enough time to fully investigate and

7   file pleadings on the merits in many habeas cases.  That should be sufficient on the time-

8   bar issues, now at – the end – of nearly seven years of post-remand briefing.  The Court

9   understands that COVID-19 protocols (as to all involved) may preclude in-person legal

10   visitation with Valerio indefinitely.  However, the Court will not delay a final resolution of

11   the time-bar issues in this case until that situation changes.  The Court herein directs

12   respondents to facilitate Valerio being able to confer confidentially and seasonably on

13   these issues with counsel and/or her assistants at the very least by telephone in a manner

14   that remains substantially consistent with NDOC's COVID-19 protocols.  The parties

15   further shall note the additional provisions regarding extension requests in the disposition

16   paragraphs in this order.[13]

17          / / / /

18

19          [13] Finally, the Court notes that Valerio asserts that statutory tolling from the timely May 21, 2009,
20   state petition would run through only the September 29, 2010, order of affirmance in that proceeding.  (*See*
     ECF No. 91, at 3 n.3; at 4, line 16; and at 7, line 16.)  It is the Court's understanding, however, that any
     such statutory tolling would run instead through the October 27, 2010, issuance of the remittitur.  *See, e.g.,*
21   *Orpiada v. McDaniel*, 750 F.3d 1086, 1088 n.1 (9th Cir. 2014); *Jefferson v. Budge*, 419 F.3d 1013, 1015 n.2
     (9th Cir. 2005); *see also Lawrence v. Florida*, 549 U.S. 327, 331 & 332 (2007) (the parties agreed that
22   statutory tolling continued through the state supreme court's November 18, 2002, issuance of the mandate,
     as opposed to its October 17, 2002, per curiam decision affirming the denial of postconviction relief); *Branch*
23   *Banking & Trust Co. v. Gerrard*, 134 Nev. 871, 874, 432 P.3d 736, 739 (2018) (an appeal concludes upon
     issuance of the remittitur); *Weddell v. Stewart*, 127 Nev. 645, 647, 649 & 652-53, 261 P.3d 1080, 1082,
24   1083 & 1085 (2011) (contrasting a related appeal in the litigation that still was pending because the remittitur
     had not yet issued with an appeal that was not pending because the remittitur instead had issued).  While
25   Valerio cites a prior order by this Court for the September 29, 2010, end date, the Court did not constrain
     statutory tolling by that date in the cited order.  The later October 27, 2010, date falls after both the
26   constructive and actual filing dates of the federal petition.  While the alacrity with which Valerio proceeded
     after September 29, 2010, is laudable, Valerio needs to show reasonable diligence, *inter alia*, more
27   principally instead between June 17, 2008, and May 21, 2009, and especially before the putative expiration
     date of the federal limitation period on August 4, 2008.  Showing only belated alacrity after an *arguendo*
28   prior prolonged period without the exercise of reasonable diligence would not suffice, particularly a prior
     period spanning the putative expiration date of the federal limitation period.

IT THEREFORE IS ORDERED that Valerio shall have ninety (90) days from entry of this order within which to file a motion for an evidentiary hearing on the time-bar issues that (a) is fully briefed on all legal issues that remain for decision, as to all relevant periods, and (b) further is fully supported on all factual points potentially material to those issues by specific allegations of actual historical fact and corresponding competent evidence presented with the motion.  The briefing cycle on the motion will be as per the local rules.

IT FURTHER IS ORDERED that respondents on reasonable request shall facilitate to the extent practicable Mr. Valerio being able to confer confidentially and seasonably with counsel and/or her assistants at the very least by telephone in a manner that remains substantially consistent with the state corrections department's COVID-19 protocols.

IT FURTHER IS ORDERED that any requests for extension of time with respect to any deadline associated with this order are strongly discouraged.  Any such requests for extension of time based upon scheduling conflicts with matters in this or any other court, including the Ninth Circuit, must show that (a) the other matter was filed prior to the original October 15, 2010, actual filing date of this matter; and (b) if the scheduling conflict is with a matter in any other court, including the Ninth Circuit, counsel has specifically timely copied the other court with this order and that court has both acted upon and denied a timely request for an extension of time in that court that was sought in full or in part based upon the time demands placed upon counsel by this order.  A copy of the extension denial order(s) in the other court(s) must be attached with the motion for an extension of time.  The Court intends to bring this matter to a just and appropriate conclusion as expeditiously as possible, subject only to a contrary order by the Ninth Circuit effectively prioritizing a matter in that court ahead of this matter.

DATED THIS 5th day of August, 2020

_____
Gloria M. Navarro
United States District Judge